## RODNEY BALLENTINE *v.* STATE OF MARYLAND

[No. 170, September Term, 1981.]

*Decided June 3, 1982.*

The cause was argued before MURPHY, C. J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

*Ray E. Stokes* for appellant.

*William C. Rogers, III, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *William Townsend, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

COUCH, J., delivered the opinion of the Court. DAVIDSON, J., dissents and filed a dissenting opinion at page 526 *infra.*

Having entered a guilty plea to a charge of murder in the second degree, in the Criminal Court of Baltimore, for which conviction he was sentenced to imprisonment for a term of twenty-five years, Rodney Ballentine, the appellant, appealed contending his plea was involuntary. The Court of Special Appeals dismissed the appeal as the record was not timely transmitted.[1] Subsequently, the appellant was granted the right to file a belated appeal and this Court, on its own motion, issued the writ of certiorari to the Court of Special Appeals, prior to consideration by that court, in order to consider an important issue of public interest.

## The Facts

Because of the limited issue to be addressed here little need be set forth of the facts giving rise to the criminal charges filed against the appellant. Suffice it to state that the appellant was charged by indictments with murder in the first degree, robbery with a deadly weapon, and related counts stemming from a homicide which occurred on November 3, 1979 in Baltimore during a "crap game" in which he and the victim were participants. When the matter was called for trial Donald Daneman, appellant's counsel, addressed him as follows:

> "Mr. Ballentine, you advised me that you want a jury trial, is that correct?
> MR. BALLENTINE: Yes.
> MR. DANEMAN: How old are you?
> MR. BALLENTINE: Eighteen years old.
> MR. DANEMAN: How far did you go in school?
> MR. BALLENTINE: Eleventh.
> MR. DANEMAN: I have advised you this morning that the State's Attorney had discussed with me a plea bargain, is that correct?
> MR. BALLENTINE: Yes.

---

1. Md. Rule 1025 a. requires that the record be transmitted within 60 days after the first order for appeal is filed.

MR. DANEMAN: And I discussed with you, that they were willing to take a plea to second degree murder, which carries not more than thirty years. Do you understand that?

MR. BALLENTINE: Yes.

MR. DANEMAN: And what was your response?

MR. BALLENTINE: I wouldn't take no plea.

THE COURT: Mr. Ballentine, everything that you say has to be taken down.

MR. BALLENTINE: That I wouldn't accept no plea.

THE COURT: What did you say?

MR. BALLENTINE: I would not accept no plea bargain."

Thereafter the record discloses the following colloquy:

"THE COURT: You will not accept the plea [bargain]. Before we proceed to trial, and I understand that a jury panel will be ready to begin the case, before we do that, I want to make certain, because of your age and because this case has been pretried, so that the Court has certain information about it, that you understand exactly what you are doing.

The maximum penalty for the crime of murder in the second degree is a term of thirty years imprisonment, that is, the Court may not give you any more time than thirty years imprisonment if you decide to plead guilty to second degree murder.

You are charged with murder in the first degree, and I believe also with robbery. Is that correct?

MR. DANEMAN: Yes, Your Honor.

THE COURT: Robbery deadly weapon and with a handgun violation, which means that if the jury finds that you are guilty of murder in the first degree, that the Court would have no choice but to impose a sentence of life imprisonment, which means, that you could not possibly be paroled until you serve at least eleven and a half years of that

sentence, and of course, you could serve the rest of your natural life, and you could not be paroled until the governor of the State, whoever that might be eleven and a half years from now, agrees to your being paroled, so that a life sentence is a very serious sentence.

If you were to get a sentence of thirty years or less, the parole board can parole you at any time they see fit. Also if you are convicted of robbery, there could be as much as an additional twenty years sentence, and if you are convicted of using a handgun in the commission of either the robbery or the alleged robbery or the alleged murder, the Court would have to give you an additional five year sentence and could give you as much as fifty additional years. So by pleading guilty to the second degree murder charge, you limit the possible sentence to a term of thirty years imprisonment. By going to trial, you are running the risk of being convicted of crimes which would compel the Court to give you a life sentence, and which might make it necessary or possible for sentences totaling life plus thirty-five years to be imposed.

I want to make certain before you proceed to trial that you understand the risk that you are running. Mr. Daneman is an extremely competent attorney. He has been in this Court many times and he is extremely serious. I am sure that he has consulted with you and your family and all concerned as to what he thinks the best course for you to take under the circumstances, but this is the decision that you yourself must make for yourself. Do you understand what I am telling you?

MR. BALLENTINE: Yes, I do.

THE COURT: Now, have you definitely decided upon whether or not you wish to go trial or enter into plea negotiations?

MR. BALLENTINE: Yes.

THE COURT: What do you want to do?

MR. BALLENTINE: I wish to have a jury trial.

THE COURT: All right. Counsel, I understand from the jury commissioner that they should be having jurors available to us in a few minutes. Can you keep Mr. Ballentine here?

THE CORRECTIONAL OFFICER: Yes.

THE COURT: We will recess until a jury is available."

Following the recess the Assistant State's Attorney addressed the court:

"MR. TOWNSEND: Your Honor, at this time the State would call the case of Rodney Ballentine, 17933034, being called as to the second degree murder.

THE CLERK: Rodney Ballentine, under indictment 17933034, the State has charged you with murder. The State is calling second degree. Counselor.

MR. DANEMAN: The plea would be guilty to second degree murder pursuant to plea negotiations entered into with the State on behalf of my client.

THE COURT: Is that correct, Mr. Ballentine?

MR. BALLENTINE: Yes."

The appellant took the stand and the trial judge conducted an inquiry pursuant to Maryland Rule 731 to determine that the plea was voluntary. The appellant does not argue that Rule 731, which states the requirements for accepting a guilty plea, was violated in this case. During this procedure it was brought out through questioning of the appellant that he did in fact kill the victim because, as he stated, he was "defending myself." When asked why he was pleading guilty he responded that he was doing so in order to limit his exposure. Furthermore, it was developed that the appellant had talked to his uncle, who was present in court, about the case but that the decision to plead guilty was appellant's and

that it was *a free and voluntary decision.* Thereafter a statement of facts was proffered to the court by the State to which the appellant had no additions or corrections. Significantly, this statement revealed that the appellant, some two hours after the homicide for which he was charged, had an argument with a Mr. Baxter at a carry-out store during which the appellant pulled a gun, pointed it at Baxter and pulled the trigger; the gun misfired. Subsequent examination of this gun and its projectiles indicated that the gun was used to fire the fatal bullet which killed the "crap game" victim. Charges arising out of the carry-out store incident were not part of the instant case but the State advised the court after the guilty plea was tendered that it would not proceed thereon and would make this concession part of the plea agreement then under consideration.

## Contention

Appellant argues that the trial judge's participation in the plea bargaining process, prior to the time the guilty plea was tendered, rendered his plea involuntary, being the result of coercion.

## Discussion

Prior to our discussion of the issue we preliminarily observe that it is only arguable whether the trial judge was participating in the plea bargaining process so as to form the predicate for appellant's argument. It could be argued that, having been informed of the State's offer and appellant's decision to reject that offer and go to trial, because of appellant's age (18 years) and the fact that the judge had gained knowledge of the evidence through a pre-trial conference, the trial judge deemed it advisable to make the appellant aware of the possible consequences of trial vis-a-vis a plea; this advice was qualified by advising the appellant that he could indeed have a trial and that the decision was his. As noted above, it is only arguable that this would constitute participating in the plea bargaining process. Because of the

conclusion we reach below, we shall assume that the trial judge did participate in the plea bargaining process.

The State argues that the issue is not properly before us inasmuch as appellant did not move, pursuant to Md. Rule 731 f, to withdraw his guilty plea. Other courts have flatly held that after questioning the defendant about the voluntariness of his guilty plea, according to the requirements of *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), the voluntariness of the plea may not be raised for the first time on direct appeal in the absence of a motion to withdraw it.[2] We have not heretofore had occasion to consider such a case. The rationale for the holdings would appear to be that because the issue was not raised in the trial court, the record usually would not be factually sufficient to allow the reviewing court to make an intelligent decision as to whether the plea was indeed involuntary.

In the past we have considered several exceptions to the general rule that an issue not raised in the trial court may not be raised on direct appeal. We have steadfastly held, for example, that jurisdiction, even though not raised in the trial court, may be raised on appeal for the first time. *E.g., State v. McCray,* 267 Md. 111, 126, 297 A.2d 265, 273 (1972); see *Sutton v. State,* 289 Md. 359, 365, 424 A.2d 755, 758-59 (1981). We have also considered issues involving due process, although not raised below, where they could be raised in a post conviction proceeding and the factual predicate for their decision was present in the record before us, in order to prevent a possible later collateral attack on a conviction. *See Walters v. State,* 242 Md. 235, 238, 218 A.2d 678, 681 (1966); *Royal v. State,* 236 Md. 443, 450, 204 A.2d 500, 503-04 (1964) ("Since there is a possibility that these last

---

2. *See* United States v. Briscoe, 428 F.2d 954 (8th Cir.), *cert. denied,* 400 U.S. 966 (1970); Kienlen v. United States, 379 F.2d 20 (10th Cir. 1967); Lorimer v. United States, 425 A.2d 1306 (D.C. 1981); Gordon v. State, 577 P.2d 701 (Alaska 1978); State v. Staples, 354 A.2d 771 (Me. 1976); State v. Gilles, 279 Minn. 363, 157 N.W.2d 64 (1968); State v. Blair, 197 Kan. 691, 421 P.2d 22 (1966); McLaughlin v. State, 32 Wis.2d 124, 145 N.W.2d 153 (1966), *cert. denied,* 389 U.S. 862 (1967); Bulloch v. State, 546 P.2d 1031 (Okla. Crim. 1976); People v. Guerrero, 57 Mich. App. 316, 225 N.W.2d 746 (1975); People v. Pinon, 35 Cal.App.3d 120, 110 Cal. Rptr. 406 (1973).

two questions might be raised in a post conviction proceeding and there are sufficient facts in the record and briefs to enable us to determine whether or not there is any merit to the contentions, we deem it expedient to dispose of them now."). We have also considered issues raised, but not decided by the lower court, in order to provide guidance to the trial court or to avoid the expense and delay of another appeal. *Department of Assessments & Taxation v. Clark,* 281 Md. 385, 405-06, 380 A.2d 28, 40 (1977). In *State v. Ricketts,* 290 Md. 287, 429 A.2d 1025 (1981) and *Countess v. State,* 286 Md. 444, 408 A.2d 1302 (1979), we considered whether the right to a jury trial was voluntarily and intelligently waived without requiring that the appellant have moved below to withdraw the election for a court trial. *See also Sutton v. State, supra; State v. Priet,* 289 Md. 267, 424 A.2d 349 (1981). We decline to adopt the contrary holdings of other courts in this area. Where the record is sufficient to determine therefrom that an accused's plea of guilty was not voluntary, we will consider the issue when raised for the first time on direct appeal.

In the instant case, the record clearly demonstrates that whatever coercive effect the comments of the trial judge may have had, if any, the appellant initially decided to reject the plea bargain and go to trial. Thus it cannot be said, at that point, that he was coerced to plead guilty. The record is silent as to what took place during the recess so we are unable to determine whether the court's prior remarks had any effect on appellant's later decision to plead guilty. We do know that subsequent to the offer of the guilty plea it was revealed, for the first time, that the State was making part of the plea bargain the dropping of charges arising from the carry-out store incident. Furthermore, the record clearly shows that the appellant, during the Rule 731 procedure, advised the trial judge that his plea change was his own decision and was voluntary. In *Sutton v. State,* 289 Md. at 365, 424 A.2d at 759, we stated, "before a guilty plea is accepted, an accused is entitled to a determination, affirmatively shown on the record, that the plea is voluntary and knowing." *See also State v. Priet, supra.* Obviously a trial

judge must not coerce a defendant into accepting a plea bargain and entering a guilty plea.[3] The appellant asks us, on this record, to hold as a matter of law that his later plea of guilty was coerced despite his contrary admission of voluntariness because of what took place before the recess was called. This we decline to do on the basis of the record now before us, for to do so would require us to speculate as to what may have occurred during the recess causing his change of mind, even assuming that what took place before the recess was coercive.

Accordingly, we shall affirm the judgment without prejudice to the appellant to file a proceeding for relief under the Post Conviction Act, Maryland Code (1957, 1982 Repl. Vol.), Article 27, § 645A.

> *Judgment affirmed.*
> *Costs to be paid by appellant.*

*Davidson, J., dissenting:*

The majority here concedes that before a guilty plea is accepted an accused is entitled to a determination, affirmatively shown on the record, that the plea is voluntary and knowing. *Sutton v. State,* 289 Md. 359, 365, 424 A.2d 755, 759 (1981). The majority then recognizes that the trial court's comments may have had a coercive effect. Moreover, the majority states that it is unable to determine whether the trial court's comments "had any effect on appellant's later decision to plead guilty," because the record was silent as to what took place during the recess. Manifestly, this means that on the record before it the majority is unable to

---

**3.** Rule 733 governs the procedure to be used in the area of plea agreements. The Committee note to the rule provides:

"The trial judge should not participate in plea discussions. There can be, however, limited advance consultation with the trial judge concerning the probable disposition upon acceptance of a plea. See ABA Minimum Standards for Criminal Justice, Pleas of Guilty, Standard 3.3."

determine whether the accused's decision to plead guilty was or was not coerced.

I do not understand how a record that shows that an accused may have been coerced and does not show that he was not, constitutes a record that affirmatively shows that the accused was not coerced and, therefore, that his plea was voluntary. In my view, the majority's interpretation defies logic. Accordingly, I respectfully dissent.

On the record before me, I can only conclude that the trial court's comments support an inference of coercion that was not negated by either the accused's acquiescence in the guilty plea or by the State's concession that it would not prosecute additional charges. Under the circumstances here, the record simply does not affirmatively show that the accused's plea was voluntary. Accordingly, I would reverse and remand to afford the accused an opportunity to plead anew. *See McCarthy v. United States,* 394 U.S. 459, 468-72, 89 S.Ct. 1166, 1172-74 (1969).