523 A.2d 635

**Vernon BARNES**

v.

**STATE of Maryland.**

**No. 937, Sept. Term, 1986.**

Court of Special Appeals of Maryland.

April 10, 1987.

Mark Colvin, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Norman L. Smith, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., Kurt L. Schmoke, State's Atty. for Baltimore City and Veronica Clarke, Asst. State's Atty. for Baltimore City, on brief), Baltimore, for appellee.

Argued before GILBERT, C.J., and KARWACKI and POLLITT, JJ.

KARWACKI, Judge.

In the Circuit Court for Baltimore City, on March 5, 1986, Vernon Barnes, the appellant, tendered *Alford*[1] pleas to one count of second degree murder and one count of use of a handgun in the commission of a crime of violence. He was sentenced to 30 years in prison for second degree murder and to a concurrent 20 year term of imprisonment for the handgun offense. We granted the appellant's timely application for leave to appeal from those judgments, and we now consider his contention that the trial judge's participation in the plea bargaining process rendered appellant's guilty pleas involuntary.

Because we are concerned only with the proceedings at which the appellant pled guilty, we need not review the facts surrounding the offenses that he allegedly committed. It is sufficient to relate that the charges of which the appellant stands convicted stemmed from the killing of one Marvin Washington on August 20, 1985. The appellant was also charged with other offenses in connection with the same incident, including attempted murder and attempted armed robbery.

The cases pending against the appellant were called for trial on March 5, 1986. At the commencement of the proceedings on that day, appellant's attorney, Sheldon E. Friedman, moved to strike his appearance in the case, citing appellant's dissatisfaction with his representation. After further discussion, it was learned that the reason (or at

---

1. *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). The court may accept an *Alford* plea "when the record shows that it was made voluntarily, unconditionally, and with an intelligent understanding of the nature of the offense and the possible consequences of the effect of the plea even though the defendant denies his guilt, provided the State demonstrates a strong factual basis for the plea and the defendant clearly expresses a desire to enter it despite his professed belief in his innocence." *Williams v. State*, 10 Md.App. 570, 574, 271 A.2d 777 (1970), *cert. denied*, 261 Md. 730 (1971).

least one of the reasons) for appellant's dissatisfaction was his belief that Mr. Friedman was going to waive what appellant considered his constitutional right to "an in-courtroom identification." The trial judge then advised the appellant that he had no such right and that it had nothing to do with Mr. Friedman. It is in this context that the following colloquy occurred:

THE COURT: Listen to me, Mr. Barnes. Let me have everything completely above board so we understand where you are going. Ms. Clarke is the prosecutor, okay. And you know who Mr. Friedman is?

THE DEFENDANT: Yes, sir.

THE COURT: You know what your charge is?

THE DEFENDANT: Yes.

THE COURT: Has anybody told you what you could possibly get? Life plus—handgun—was it a handgun?

MS. CLARKE [Prosecutor]: Yes, handgun, a crime of violence.

THE COURT: The bottom line would be what, a total of what?

MS. CLARKE: Two life sentences, one for attempted murder, one for the murder itself. Plus 20 for the handgun per victim, Your Honor, and there's two victims, and attempted armed robbery.

THE COURT: So you are looking at two life sentences plus 50 years. That is the most that anyone could give you. It doesn't carry the death penalty. That would entitle the State to execute you, but the most that could happen is that you could go to jail two lifetimes plus 50 years. Do you understand that? Just listen to me. The State is recommending to me or was willing, if you wanted to plead guilty—I think that was last week or something.

MS. CLARKE: Monday.

THE COURT: That they would recommend 50 years.

MS. CLARKE: Yes, Your Honor. The State as per plea negotiations only would call the second degree murder

case with reference to the victim Marvin Washington. That is a 30 year penalty. Plus on the handgun, we are recommending 50 years.

THE COURT: She is recommending 50 years. I told your attorney. I don't know anything about this case. I don't know you from Adam, I really don't. But if you wanted to plead guilty, I was willing, even though the State is screaming and kicking for 50 years, I was willing to go around it today in 15 minutes. I would give you a total of 30 years. That is what I told Mr. Friedman, and Ms. Clarke got angry. She walked out the door. I know you are not a party to anything. Listen to me. You tell me the man is incompetent for what he did for you. You are facing two life terms plus 50 years. He got me to offer you not over 30 years and you are telling me that this man is incompetent? Is that what you are telling me? Listen to me because I want an answer right now. I am not fooling around now. I swear to God that is true. You can ask anyone down here. I have never presided over a jury trial. I have never had a jury come back not guilty. If this jury comes back guilty, depending on what the pre-sentence report is, I could give you a total of two life sentences plus 50 years. I want you to know that. I am going to give you two minutes to talk to Mr. Friedman. If you want him as your lawyer, fine. If you don't want him as your lawyer, I will exclude him and you try the case without your lawyer or you can have him as your lawyer. But in two minutes that 30 year offer I am going to withdraw forever. Do you understand me, yes or no? Do you understand me?

THE DEFENDANT: Yeah, I understand.

THE COURT: Take a seat and talk to Mr. Friedman. I will be back in two minutes.

Following a brief recess, the trial judge returned and again stated that he was willing to give appellant a sentence "below what the State was recommending." He also commented that he thought two minutes was "more than sufficient time" to make a decision because, in his opinion,

appellant had been "thinking about this" since his arraignment in November of 1985. The judge then asked appellant whether he wanted Mr. Friedman to remain as his attorney. The appellant responded: "Maybe I got a little upset. All right. He is a good attorney. He didn't do nothing wrong."

With the appellant's dissatisfaction with counsel apparently resolved, the trial judge asked whether there was going to be a plea. The appellant indicated that he wished to enter an *Alford* plea to one count of second degree murder and one count of use of a handgun in the commission of a crime of violence. After explaining the *Alford* plea, the trial judge conducted an inquiry into the voluntariness of the appellant's plea. He ascertained, *inter alia,* that the appellant was satisfied with Mr. Friedman's representation, that no one had used physical force or threats of physical force to coerce him into pleading guilty, and that the only inducement offered to get him to plead guilty was the court's offer of a 30 year sentence. When asked whether he understood that by pleading guilty he was giving up his rights to a jury trial and to confront the witnesses against him, the appellant answered affirmatively. The trial judge ultimately posed a direct question to the appellant as to the voluntariness of his plea:

Q  Are you pleading guilty voluntarily? In other words, are you voluntarily pleading guilty or is somebody forcing you to plead guilty?

A  Do I have to answer that question?

Q  I wish you would. Meaning, is somebody putting pressure on you?

A  Ain't nobody putting pressure on me, but I just accept the guilty plea, like my lawyer said, an Alford plea.

Q  That is what an Alford plea means. Meaning you do not admit you did this crime. If you went to trial with the evidence that you are aware of that the State has, that that evidence could very possibly and probably be believed by a jury beyond a reasonable doubt

and that's why you are pleading guilty under Alford, not that you are admitting your guilt; is that right?

A   That's right.  So I answered your question.

When the prosecutor expressed continuing concern about the voluntariness of the plea, the trial judge questioned the appellant further:

Q   You have already made it clear to me that you are maintaining that you did not do this crime, is that right or is that wrong?  Did you or did you not shoot Mr. Washington?

A   No, I didn't.

Q   So you are saying that you did not commit the crime?

A   I didn't shoot him.

Q   Maybe somebody else did.  Even if you were there when the shooting occurred and you were part of the attempted robbery, that would still make you technically guilty of first degree murder.

A   That would make me accessory to the crime.

Q   That is the same punishment.

A   That is the same punishment?

Q   You know a lot about criminal law.  But you are pleading guilty.  You tell me why you are pleading guilty.  Why are you pleading guilty?

A   I don't really have too much to say on that.

Q   Why not?  How old are you?

A   Twenty-four.

Q   You are your own person.  You can do whatever you want.  You are an adult; is that right?

A   I can't do whatever I want with 30 years.

Q   That is if you get 30 years.  Right now if you want to plead not guilty, we will send for a jury.

A   I told you, I was going to accept the guilty plea.  My attorney explained it to me.  So I haven't answered the question the State prosecutor asked.  All right.  It's going to be voluntary.  It's voluntary.

Q But you're not admitting that you did the crime?

A But I'm not—

Q I understand that. You are not admitting that you did the crime.

A I didn't do the crime. I answered the question.

Q But you are voluntarily pleading guilty?

A I am voluntarily pleading guilty, but I didn't do the crime. Does that answer your question?

Q Yes.

At the conclusion of this questioning, the trial judge found that the appellant's plea was voluntary and knowingly and intelligently entered. After the State proffered the evidence that would have been introduced against the appellant, the trial judge found that there was a factual basis for the charges—second degree murder and use of a handgun in the commission of a crime of violence—to which the appellant was pleading guilty. Accordingly, the court accepted the appellant's *Alford* plea pursuant to Rule 4–242(c).[2] Thereafter, on April 16, 1986, the trial judge sentenced the appellant to 30 years for second degree murder and to a concurrent 20 year term on the handgun charge, in compliance with his offer to the appellant at the proceedings on March 5.

In arguing that the trial judge's participation in the plea bargaining process rendered his guilty pleas involuntary, the appellant suggests that *any* judicial participation in plea discussions is coercive and renders a resultant guilty plea involuntary *per se.* The State, on the other hand, argues

---

2. Rule 4–242(c) provides:

The court may accept a plea of guilty only after it determines, upon an examination of the defendant on the record in open court conducted by the court, the State's Attorney, the attorney for the defendant, or any combination thereof, that (1) the defendant is pleading voluntarily, with understanding of the nature of the charge and the consequences of the plea; and (2) there is a factual basis for the plea. The court may accept the plea of guilty even though the defendant does not admit guilt. Upon refusal to accept a plea of guilty, the court shall enter a plea of not guilty.

that "such participation is, at most, only a factor to be considered in deciding the real issue—the voluntariness *vel non*, of Appellant's guilty plea." The appellant counters that, even under that standard, the judge's comments in this case were so coercive as to render his pleas involuntary.

Rule 4–243 governs plea agreements in this State. Although the rule does not expressly prohibit judicial participation in plea bargaining, its language contemplates a limited role for the trial judge in that process. It provides, in pertinent part:

(a) *Conditions for Agreement.—The defendant may enter into an agreement with the State's Attorney for a plea of guilty or nolo contendere on any proper condition, including one or more of the following:*

(1) That the State's Attorney will amend the charging document to charge a specified offense or add a specified offense, or will file a new charging document;

(2) That the State's Attorney will enter a nolle prosequi pursuant to Rule 4–247(a) or move to mark certain charges against the defendant stet on the docket pursuant to Rule 4–248(a);

(3) That the State's Attorney will agree to the entry of a judgment of acquittal on certain charges pending against the defendant;

(4) That the State will not charge the defendant with the commission of certain other offenses;

(5) That the State's Attorney will recommend, not oppose, or make no comment to the court with respect to a particular sentence, disposition, or other judicial action;

(6) *That the parties will submit a plea agreement proposing a particular sentence, disposition, or other judicial action to a judge for consideration pursuant to section (c) of this Rule.*

(b) *Recommendations of State's Attorney on Sentencing.*—The recommendation of the State's Attorney with respect to a particular sentence, disposition, or other

judicial action made pursuant to subsection (a)(5) of this Rule is not binding on the court. The court shall advise the defendant at or before the time the State's Attorney makes a recommendation that the court is not bound by the recommendation, that it may impose the maximum penalties provided by law for the offense to which the defendant pleads guilty, and that imposition of a penalty more severe than the one recommended by the State's Attorney will not be grounds for withdrawal of the plea.

(c) *Agreements of Sentence, Disposition, or Other Judicial Action.—*

(1) *Presentation to the Court.—If a plea agreement has been reached pursuant to subsection (a)(6) of this Rule* for a plea of guilty or nolo contendere which contemplates a particular sentence, disposition, or other judicial action, *the defense counsel and the State's Attorney shall advise the judge of the terms of the agreement when the defendant pleads. The judge may then accept or reject the plea and, if accepted, may approve the agreement or defer decision as to its approval or rejection until after such pre-sentence proceedings and investigation as the judge directs.*

(2) *Not Binding on the Court.—*The agreement of the State's Attorney relating to a particular sentence, disposition, or other judicial action is not binding on the court unless the judge to whom the agreement is presented approves it.

(3) *Approval of Plea Agreement.—*If the plea agreement is approved, the judge shall embody in the judgment the agreed sentence, disposition, or other judicial action encompassed in the agreement or, with the consent of the parties, a disposition more favorable to the defendant than that provided for in the agreement.

(4) *Rejection of Plea Agreement.—*If the plea agreement is rejected, the judge shall inform the parties of this fact and advise the defendant (A) that the court is not bound by the plea agreement; (B) that the defendant may withdraw the plea; and (C) that if the defendant persists

in the plea of guilty or nolo contendere, the sentence or other disposition of the action may be less favorable than the plea agreement. If the defendant persists in the plea, the court may accept the plea of guilty only pursuant to Rule 4–242(c) and the plea of nolo contendere only pursuant to Rule 4–242(d).

(Emphasis supplied.)

■ Under subsection (a)(6) of the rule, the defendant and the State's Attorney may negotiate a plea agreement "proposing a particular sentence, disposition, or other judicial action." When that agreement is submitted to the court, the judge may exercise one of the options spelled out in subsection (c)(1)–(4). The rule does not proscribe the tender of a proposed agreement to the judge by the prosecutor and defense counsel in order to ascertain whether the court would approve the agreement. Nor does it prohibit the trial judge who finds a proposed agreement unsatisfactory at such a conference from indicating what type of agreement would be acceptable. Such conferences benefit both the State and the defendant as they seek a resolution of the case without trial. Indeed, the existence of Rule 4–243 attests to a recognition that proper plea negotiations are indispensable in the management of the heavy criminal dockets of the trial courts of our State. *See Allgood v. State,* 309 Md. 58, 66, 522 A.2d 917, 920 (1987); *State v. Brockman,* 277 Md. 687, 692–93, 357 A.2d 376 (1976); *Brent v. State,* 63 Md.App. 197, 203, 492 A.2d 637 (1985). Consequently, we reject appellant's argument that any participation by the trial judge in the plea bargaining process renders a resulting guilty plea involuntary.

The role of the judge contemplated by Rule 4–243 is consistent with the judicial role in plea negotiations suggested by Standard 14–3.3 of the American Bar Association's Standards for Criminal Justice, Pleas of Guilty (2d ed. 1980 & 1986 Supp.).[3]

---

**3.** *Standard 14–3.3. Responsibilities of the judge*

(a) The judge should not accept a plea of guilty or nolo contendere without first inquiring whether the parties have arrived at a plea agreement and, if there is one, requiring that its terms, conditions, and reasons be disclosed.

(b) If a plea agreement has been reached by the parties which contemplates the granting of charge or sentence concessions by the judge, the judge should:

(i) order the preparation of a preplea or presentence report, when needed for determining the appropriate disposition;

(ii) give the agreement due consideration, but notwithstanding its existence reach an independent decision on whether to grant charge or sentence concessions; and

(iii) in every case advise the defendant whether the judge accepts or rejects the contemplated charge or sentence concessions or whether a decision on acceptance will be deferred until after the plea is entered and/or a preplea or presentence report is received.

(c) When the parties are unable to reach a plea agreement, if the defendant's counsel and prosecutor agree, they may request to meet with the judge in order to discuss a plea agreement. If the judge agrees to meet with the parties, the judge shall serve as a moderator in listening to their respective presentations concerning appropriate charge or sentence concessions. Following the presentation of the parties, the judge may indicate what charge or sentence concessions would be acceptable or whether the judge wishes to have a preplea report before rendering a decision. The parties may thereupon decide among themselves, outside of the presence of the court, whether to accept or reject the plea agreement tendered by the court.

(d) Whenever the judge is presented with a plea agreement or consents to a conference in order to listen to the parties concerning charge or sentence concessions, the court may require or allow any person, including the defendant, the alleged victim, and others, to appear or to testify.

(e) Where the parties have neither advised the judge of a plea agreement nor requested to meet for plea discussion purposes, the judge may inquire of the parties whether disposition without trial has been explored and may allow an adjournment to enable plea discussions to occur.

(f) All discussions at which the judge is present relating to plea agreements should be recorded verbatim and preserved, except that for good cause the judge may order the transcript of proceedings to be sealed. Such discussions should be held in open court unless good cause is present for the proceedings to be held in chambers. Except as otherwise provided in this standard, the judge should never through word or demeanor, either directly or indirectly, communicate to the defendant or defense counsel that a plea agreement should be accepted or that a guilty plea should be entered.

(g) In cases where a defendant offers to plead guilty and the judge decides that the final disposition should not include the charge or sentence concessions contemplated by the plea agreement, the judge shall so advise the defendant and permit withdraw-

Subsection (c) of that standard states that the judge may meet with defense counsel and the prosecutor when the parties are unable to reach a plea agreement on their own, but that the judge's role in such a meeting should be to "serve as a moderator." The judge "may indicate what charge or sentence concessions would be acceptable," but the parties must then "decide among themselves, outside of the presence of the court, whether to accept or reject the plea agreement tendered by the court." Subsection (f) further cautions that "the judge should never through word or demeanor, either directly or indirectly, communicate to the defendant or defense counsel that a plea agreement should be accepted or that a guilty plea should be entered."

■ We think that the trial judge in the instant case exceeded the permissible bounds of judicial participation in plea bargaining contemplated by Rule 4–243. Rather than merely approving or rejecting a plea agreement between the State's Attorney and the defendant, the judge, in effect, negotiated his own agreement with the defendant by offering him a more favorable sentence than the State had been willing to offer in its plea discussions. In the judge's own words:

> She [Ms. Clarke, Assistant State's Attorney] is recommending 50 years .... But if you wanted to plead guilty, I was willing, even though the State is screaming and

al of the tender of the plea. In cases where the defendant pleads guilty pursuant to a plea agreement and the court, following entry of the plea, decides that the final disposition should not include the contemplated charge or sentence concessions, withdrawal of the plea shall be allowed if:

(i) prior to the entry of the plea the judge concurs, whether tentatively or fully, in the proposed charge or sentence concessions; or

(ii) the guilty plea is entered upon the express condition, approved by the judge, that the plea can be withdrawn if the charge or sentence concessions are subsequently rejected by the court.

In all other cases where a defendant pleads guilty pursuant to a plea agreement and the judge decides that the final disposition should not include the contemplated charge or sentence concessions, withdrawal of the plea may be permitted in the discretion of the judge.

kicking for 50 years, I was willing to go around it today in 15 minutes. I would give you a total of 30 years. That is what I told Mr. Friedman, and Ms. Clarke got angry. She walked out the door.

The trial judge, in our view, improperly interjected himself into the plea bargaining process as an active negotiator, infringing upon the function reserved to counsel in the adversary process. Having determined that the trial judge exceeded the permissible bounds of judicial participation in plea bargaining, we still must consider the impact of the judge's participation on the voluntariness of the appellant's pleas.

■ A guilty plea, in order to be constitutionally valid, must be both voluntary and intelligently entered. *Boykin v. Alabama,* 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274, 279 (1969); *State v. Priet,* 289 Md. 267, 275, 424 A.2d 349 (1981). The voluntariness of a guilty plea "can be determined only by considering all of the relevant circumstances surrounding it." *Brady v. United States,* 397 U.S. 742, 749, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747, 757 (1970), *quoted in State v. Brazle,* 296 Md. 375, 383–84, 463 A.2d 798 (1983). Under this "totality of the circumstances" test, we conclude that the appellant's guilty pleas in this case were involuntary and that his convictions, consequently, must be reversed. A plea is not voluntary when it is obtained "through coercion, terror, inducements or threats, subtle or blatant." *State v. Brazle, supra,* 296 Md. at 382, 463 A.2d 798. We believe the trial judge's comments to the appellant at the proceedings on March 5, 1986, improperly coerced the appellant into pleading guilty. Although the record is not entirely clear, it appears that the appellant had previously rejected the State's pre-trial offer of negotiated pleas calling for a total sentence of 50 years. When the appellant was brought before the court on March 5, he gave no indication that he had changed his mind. Rather, the appellant expressed dissatisfaction with his attorney's performance. At that point, the trial judge intervened:

... Listen to me. You tell me the man is incompetent for what he did for you. You are facing two life terms plus 50 years. He got me to offer you not over 30 years and you are telling me that this man is incompetent? Is that what you are telling me? *Listen to me because I want an answer right now. I am not fooling around now.* I swear to God that is true. You can ask anyone down here. I have never presided over a jury trial. *I have never had a jury come back not guilty.* If this jury comes back guilty, depending on what the pre-sentence report is, *I could give you a total of two life sentences plus 50 years.* I want you to know that. *I am going to give you two minutes to talk to Mr. Friedman.* If you want him as your lawyer, fine. If you don't want him as your lawyer, I will exclude him and you try the case without your lawyer or you can have him as your lawyer. *But in two minutes that 30 year offer I am going to withdraw forever.* Do you understand me, yes or no? Do you understand me?

(Emphasis supplied.)

Upon returning from the brief recess that followed the trial judge's remarks, the appellant decided to accept the plea bargain. We believe the judge's remarks, particularly the emphasized portions, were very likely responsible for the appellant's decision. Taken as a whole, they tended to discourage the appellant's assertion of his innocence in a jury trial and suggested that if a jury found the appellant guilty, he would receive the maximum sentence. Furthermore, the two-minute time limit imposed upon the appellant added to the coercive nature of the remarks, even where the appellant had considered a plea bargain prior to that time.

In *Ballentine v. State,* 293 Md. 518, 445 A.2d 1033 (1982), the Court of Appeals considered the same contention that is before us now: whether the trial judge's participation in the plea bargaining process rendered the accused's guilty plea involuntary. Although the Court upheld Ballentine's plea, it did not decide whether the judge's participation influenced that plea. The judicial participation in *Ballentine*

consisted of the following comments, made after Ballentine had stated that he would not accept a plea:

THE COURT: You will not accept the plea [bargain]. Before we proceed to trial, and I understand that a jury panel will be ready to begin the case, before we do that, I want to make certain, because of your age and because this case has been pretried, so that the Court has certain information about it, that you understand exactly what you are doing.

The maximum penalty for the crime of murder in the second degree is a term of thirty years imprisonment, that is, the Court may not give you any more time than thirty years imprisonment if you decide to plead guilty to second degree murder.

You are charged with murder in the first degree, and I believe also with robbery. Is that correct?

MR. DANEMAN [Ballentine's Counsel]: Yes, Your Honor.

THE COURT: Robbery deadly weapon and with a handgun violation, which means that if the jury finds that you are guilty of murder in the first degree, that the Court would have no choice but to impose a sentence of life imprisonment, which means, that you could not possibly be paroled until you serve at least eleven and a half years of that sentence, and of course, you could serve the rest of your natural life, and you could not be paroled until the governor of the State, whoever that might be eleven and a half years from now, agrees to your being paroled, so that a life sentence is a very serious sentence.

If you were to get a sentence of thirty years or less, the parole board can parole you at any time they see fit. Also if you are convicted of robbery, there could be as much as an additional twenty years sentence, and if you are convicted of using a handgun in the commission of either the robbery or the alleged robbery or the alleged murder, the Court would have to give you an additional five year sentence and could give you as much as fifty additional years. So by pleading guilty to the second

degree murder charge, you limit the possible sentence to a term of thirty years imprisonment. By going to trial, you are running the risk of being convicted of crimes which would compel the Court to give you a life sentence, and which might make it necessary or possible for sentences totaling life plus thirty-five years to be imposed.

I want to make certain before you proceed to trial that you understand the risk that you are running. Mr. Daneman is an extremely competent attorney. He has been in this Court many times and he is extremely serious. I am sure that he has consulted with you and your family and all concerned as to what he thinks the best course for you to take under the circumstances, but this is the decision that you yourself must make for yourself. Do you understand what I am telling you?

MR. BALLENTINE: Yes, I do.

THE COURT: Now, have you definitely decided upon whether or not you wish to go [to] trial or enter into plea negotiations?

MR. BALLENTINE: Yes.

THE COURT: What do you want to do?

MR. BALLENTINE: I wish to have a jury trial.

293 Md. at 520–22, 445 A.2d 1033. Following a recess, Ballentine stated that he would enter a guilty plea pursuant to plea negotiations with the State. The Court of Appeals, in upholding the voluntariness of that plea, noted that "whatever coercive effect the comments of the trial judge may have had, if any, the appellant initially decided to reject the plea bargain and go to trial." *Id.* at 525, 445 A.2d 1033. Even assuming that what took place before the recess was coercive, Ballentine did not change his mind until after the recess that followed the supposedly coercive remarks, and the Court refused to speculate as to what occurred during that recess, suggesting post conviction proceedings as the proper method of inquiring into any impropriety which occurred at that time. *Id.* at 526, 445 A.2d 1033.

Even if the Court of Appeals had held that the judicial participation at issue in *Ballentine* was not coercive, it

would not change our decision in this case. The trial judge in *Ballentine* merely explained the possible consequences Ballentine faced if he went to trial. She did not take an active role in arranging a plea agreement. Indeed, the Court of Appeals observed that it was only arguable whether the trial judge "participated" in the plea bargaining process. *Id.* at 523, 445 A.2d 1033. In contrast, the language employed by the trial judge in the case *sub judice* very probably intimidated the appellant into changing his mind about pleading not guilty. The subsequent inquiry by the court into the voluntariness of the appellant's pleas did not erase the coercive effect of the judge's earlier remarks. Under the totality of the circumstances, we hold that the appellant's pleas were involuntary and that the judgments rendered thereon must be stricken. The case will be remanded to allow the appellant to plead anew to the charges pending against him.

JUDGMENTS VACATED;

CASE REMANDED FOR FURTHER PROCEEDINGS;

COSTS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.